GUS EFTHIMIOU, JR., EXECUTOR (ESTATE OF ELEANOR C. SMITH) *v.* RICHARD B. SMITH
(SC 16969)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 12—officially released April 20, 2004

*Edward R. Scofield*, for the appellant (defendant).

*Thomas E. Minogue, Jr.*, with whom was *Richard Meehan*, for the appellee (plaintiff).

NORCOTT, J. This appeal arises out of an action brought by the plaintiff, Gus Efthimiou, Jr., the executor of the estate of the decedent, Eleanor C. Smith, against the defendant, Richard B. Smith, for breach of a settlement agreement and breach of his fiduciary duties as trustee of an inter vivos trust. The principal issue in this appeal is whether the trial court properly determined that, because both the plaintiff's decedent and the defendant had materially breached the settlement agreement, neither party could enforce its terms and conditions. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. Eleanor C. Smith and Hyman H. Smith had three sons: the defendant, Bruce Smith and Ronald Smith. During his lifetime, Hyman had accumulated real estate holdings in Connecticut, the management and ultimate disposition of which he provided for by means of two trusts: the H.H. and E.C. Smith trust (Smith trust), an inter vivos trust that was created in 1979; and a testamentary trust that was established and funded in 1979 pursuant to Hyman's last will and testament. Eleanor held a 46.89 percent interest in the Smith trust, which she was free to dispose of upon her death as she wished. The other 53.11 percent interest in the Smith trust was held by Hyman during his lifetime, and by the testamentary trust after his death. The defendant and Bruce were named cotrustees of the Smith trust.

The defendant was the trustee of the testamentary trust, of which Eleanor Smith was the sole income beneficiary during her lifetime. Furthermore, the testamentary trust provided Eleanor with the power to appoint the remainder interest to her three sons or their issue, in whatever percentage she chose. Therefore, after the death of Hyman Smith in 1979, Eleanor became the sole

income beneficiary of the Smith trust: holding a 46.89 percent interest directly; and holding the remaining 53.11 percent interest indirectly as the lifetime beneficiary of the testamentary trust.

In 1983, Ronald Smith brought an action in federal court challenging the management of the Smith trust by the defendant and Bruce Smith. In 1985, the parties settled that federal action by executing a financial settlement agreement (settlement agreement). The settlement agreement, dated May 2, 1985, was signed by all of the relevant parties: Eleanor Smith, individually, and as executrix of Hyman Smith's estate; the defendant, individually, as cotrustee of the Smith trust, and as trustee of the testamentary trust; Bruce, individually, and as cotrustee of the Smith trust; and Ronald, individually. According to the terms of the settlement agreement, Eleanor agreed to devise a will in favor of the defendant and Bruce, bequeath to them all of her interest in the Smith trust, and execute her power of appointment under the testamentary trust in favor of the defendant and Bruce. In exchange, the defendant and Bruce agreed to create a new inter vivos trust for the sole benefit of Eleanor and Ronald. This new trust would be funded by the transfer of $1,000,000 from the Smith trust. In addition, the defendant and Bruce agreed to: (1) provide a separate bank account, solely in Eleanor's name, and initially fund it with $50,000; (2) provide Eleanor with $100,000, prorated monthly, on an annual tax free basis; and (3) provide Eleanor with annual distributions of 5 percent of the corpus of the Smith trust.

On August 23, 1985, Eleanor Smith delivered demand letters to the defendant asking that: the bank account be set up; she receive annual accountings pursuant to the terms of the settlement agreement; and her account be funded according to the terms of the settlement agreement. None of these obligations was ever com-

pleted by the defendant.[1] Eleanor also failed to complete her obligation under the settlement agreement, namely, the creation of a new will in favor of the defendant and Bruce Smith that bequeathed to them her interests in both the Smith trust and the testamentary trust.

After Eleanor Smith's death in 1994, the plaintiff submitted to probate a will in Eleanor's name that predated the settlement agreement. Contrary to the terms of the settlement agreement, this will named Ronald Smith as the sole beneficiary of Eleanor's estate, and bequeathed to the defendant and Bruce Smith the sum of $1 each. On January 24, 1996, the Probate Court admitted Eleanor's will to probate, and appointed the plaintiff as executor of Eleanor's estate.[2]

Thereafter, on August 13, 1996, the plaintiff brought the present action against the defendant,[3] claiming that he had breached the terms of the settlement agreement, and had breached his fiduciary duties under both the settlement agreement and the Smith trust. The defendant filed a counterclaim alleging that Eleanor Smith

[1] The trial court found, however, that the defendant completed his other material obligation under the settlement agreement, namely, the creation of an additional trust funded with $1,000,000 from the Smith trust. Although this constituted a material obligation under the settlement agreement, the trial court noted that this additional trust was primarily for the benefit of Ronald Smith, as Eleanor Smith was already the beneficiary of the $1,000,000 when it was in the Smith trust. Thus, when measuring the defendant's compliance with the terms of the settlement agreement against Eleanor's compliance, the trial court focused on the material obligations that pertained to direct payments to Eleanor.

[2] The decision of the Probate Court was appealed to the Superior Court, which determined that the settlement agreement was not a will, but only a contract to make a will. Accordingly, the decision of the Probate Court was affirmed. The propriety of the Superior Court's determination is not a subject of the present appeal.

[3] Bruce Smith died in 1996, and the defendant became the sole remaining trustee of the trust.

had breached the settlement agreement.[4] The trial court found that both Eleanor and the defendant had materially breached the terms of the settlement agreement, were unwilling to perform their obligations, and, therefore, that neither party could recover on their claims alleging breach of the settlement agreement. Turning to the plaintiff's remaining claim, the trial court found that the defendant had breached his fiduciary duties to the Smith trust.[5] Accordingly, the trial court rendered judgment for the plaintiff in the amount of $5,173,066 plus costs. The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursu-

[4] The defendant's counterclaim also contained a second count setting forth a legal malpractice action against the plaintiff in his individual capacity. Because this counterclaim was brought against the plaintiff individually, and not against him in his capacity as a plaintiff in the present action, namely, as executor of Eleanor Smith's estate, the trial court granted the plaintiff's motion to strike the malpractice action from the defendant's counterclaim. The propriety of the trial court's determination is not a subject of the present appeal.

[5] More specifically, the trial court found that "[the defendant's] misuse of the [Smith trust] funds is a clear case of self-dealing and a misuse of his fiduciary responsibility. [The defendant] acted as both the trustee of the [Smith trust] in loaning the funds and the trustee of [a separate trust] in borrowing the funds. He then proceeded to personally borrow funds from the [separate trust]. This was all done without any written consent from Eleanor. [The defendant] did nothing to protect the [Smith trust] such as provide for interest payments. Finally, [the defendant], who had the burden of proving by clear and convincing evidence that this transaction constituted fair dealing, never presented evidence or attempted to present evidence of repayment."

In the present appeal, the defendant has not directly challenged the trial court's substantive finding that he breached his fiduciary duties to the Smith trust. Instead, the defendant contends solely that the settlement agreement should have been enforced by the trial court, and, that, therefore, the secondary determination concerning his breach of fiduciary duties to the underlying Smith trust should be reversed.

The trial court also found that the defendant had not breached his fiduciary duties to the Smith trust by engaging in several transactions with his former wife, Jody Roher Smith, the Westville trust and Vorlon Holding, LLC. See footnote 7 of this opinion. The plaintiff did not cross appeal from that aspect of the trial court's judgment and, therefore, it is not before us in the present appeal.

ant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the defendant claims that the trial court improperly: (1) determined that the settlement agreement was not enforceable; (2) failed to conclude that, under the settlement agreement, the assets of the trust passed to the defendant and Bruce Smith upon Eleanor Smith's death; and (3) failed to conclude that, under the settlement agreement, the defendant was not liable for breach of fiduciary duties to the Smith trust. We disagree with the defendant's first claim, and, accordingly, we affirm the judgment of the trial court.[6]

As an initial matter, we set forth the applicable standard of review. The defendant contends that de novo review is the proper standard because definitive contract language determines the issues in this case. To the contrary, the plaintiff contends that the trial court's determination that both parties materially breached the settlement agreement was a factual determination and, therefore, subject to a clearly erroneous standard of review. We agree with the plaintiff.

The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. See *Bernstein* v. *Nemeyer*, 213 Conn. 665, 672–73, 570 A.2d 164 (1990); *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 59, 829 A.2d 102 (2003); *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 126, 682 A.2d 572, cert. denied, 239 Conn. 949, 950, 686 A.2d 126 (1996). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there

---

[6] The defendant's second and third claims on appeal are both predicated on the validity of the settlement agreement. Because we conclude that the trial court properly refused to enforce the settlement agreement, it is unnecessary for us to address these two remaining claims.

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 277, 823 A.2d 1172 (2003).

In the present case, the trial court heard evidence concerning the claims presented by both parties, including testimony from the defendant and his former wife.[7] On the basis of the evidence presented, the court found that the plaintiff "demonstrated by a preponderance of the evidence that [the defendant] failed to fulfill his obligations under the [s]ettlement [a]greement to his mother," namely, creating a separate checking account and funding it with $50,000, providing Eleanor Smith with $100,000 annually, and making annual 5 percent disbursements from the corpus of the trust to Eleanor; and that these were material obligations under the settlement agreement. Turning to Eleanor's conduct, the trial court found that "[the defendant] . . . also prove[d] by a preponderance of the evidence his counterclaim that Eleanor failed to fulfill her obligation to execute a new [w]ill consistent with the terms of the [s]ettlement [a]greement. This was also a material obligation under the [s]ettlement [a]greement." Therefore,

---

[7] The plaintiff brought a separate action against the defendant's former wife, Jody Roher Smith, alleging that she had aided and abetted the defendant in breaching his fiduciary duties under the settlement agreement and the Smith trust. More specifically, the plaintiff alleged that Jody, individually, as trustee of the Westville trust, and as the sole member of Vorlon Holding, LLC, had aided the defendant with removing assets from the Smith trust and placing them under their personal control. The action against Jody was consolidated for trial with the present action against the defendant. The trial court found that the defendant had not breached his fiduciary duties to the Smith trust in his dealings with Jody, the Westville trust, and Vorlon Holding, LLC; see footnote 5 of this opinion; and rendered judgment accordingly for them in the companion case. The plaintiff appealed separately from the judgment in favor of Jody, the Westville trust, and Vorlon Holding, LLC, which we also decide today. *Efthimiou* v. *Smith*, 268 Conn. 499, 846 A.2d 222 (2004).

on the basis of these findings, the trial court determined that both parties were in mutual breach of the settlement agreement.

After making this determination, the trial court noted that, "[u]nlike in some cases where the issue for the court to decide is which party materially breached first, the court does not believe that would be appropriate here" because both parties were prospectively unwilling to perform their obligations. In regards to the creation of the new will, the trial court found that "Eleanor was unwilling to execute a new will because she did not believe that [the defendant] was going to fulfill his obligations to her under the [s]ettlement [a]greement."[8] Similarly, the trial court found that "[the defendant] believed that his mother was not going to fulfill her obligation under the [settlement agreement] to execute a new [w]ill. In fact, he testified that he believed a [w]ill would have been of no consequence because Eleanor could have changed it."[9] In accordance with this finding concerning the defendant's subjective beliefs, the trial court also found that he actively had sought to remove assets from the corpus of the Smith trust and place them under his personal control, thereby defeating Eleanor's ability to bequeath them to another party through her will.[10]

---

[8] As the trial court further noted, "[Eleanor Smith] was correct in this belief. Although she lived for nine years after the [s]ettlement [a]greement was signed, [the defendant] never opened a separate account for her and he never funded it."

[9] We note that the defendant's belief was contrary to the express terms of paragraph 10 A of the settlement agreement, which provided in relevant part: "Eleanor C. Smith shall duly and promptly execute a last will and testament embodying the provisions of this [a]greement . . . and after such execution *shall not alter or revoke any of the provisions thereof which embody and/or fulfill the provisions of this [a]greement without the written consent of all parties to this [a]greement* . . . ." (Emphasis added.)

[10] More specifically, the trial court found that "it is clear from [the defendant's] conduct that he did what he could to make sure that some assets that were initially funded by [Smith trust] money passed to him outside of the [Smith trust]. Examples of this conduct include the Westport property, which if it had not been foreclosed upon, would have passed directly to

Furthermore, despite the fact that nine years had elapsed between the signing of the settlement agreement and Eleanor Smith's death, neither party attempted to remedy the other party's ongoing breach. For example, the trial court found that "[the defendant's] testimony that he never checked to see if [Eleanor] executed a new [w]ill and that he did not want to bother his mother about this was not credible."[11] Similarly, the trial court noted that Eleanor told her attorney that she would not execute a new will because the defendant would not keep his promise, and neither party disputes that Eleanor never gave notice to the defendant that he was in breach of the terms of the settlement agreement.[12]

The trial court determined that, "[i]n sum, both Eleanor Smith and [the defendant] were unwilling to perform their obligations under the [s]ettlement [a]greement," and, therefore, neither party was entitled to enforce its provisions. "[I]n some instances where both parties are at fault (or in default) neither may recover. . . . Whether this doctrine is described as failure of consideration, failure to satisfy a condition precedent, or mutual breach of contract, it is clear that in

him outside of the [Smith trust] upon [Eleanor Smith's] death. Likewise, he personally received funds that had been loaned from the [Smith trust] to [a separate trust controlled by him] for his personal investment."

[11] We note that the defendant's testimony that he never checked to see if the will was made, in addition to being found not credible by the trial court, is also contrary to his express rights under paragraph 10 A of the settlement agreement, which provided in relevant part: "A true duplicate original copy of said last will and testament shall be provided promptly to [the defendant] and Bruce Smith . . . together with all codicils or replacements thereof which may be subsequently signed by Eleanor Smith. . . ."

[12] Paragraph 18 u of the settlement agreement provided in relevant part: "If any acts occur which would be considered a material breach of this agreement, then the aggrieved party shall give written notice to said trustee(s). Said trustee(s) shall then have 30 days after such notice in which to fully cure said breach . . . . This provision shall not apply to acts of the trustees characterized by malice, fraud, or criminal misconduct."

proper circumstances a court may refuse to allow recovery to either party to an agreement because of their mutual fault, which in contract terms might be more properly described as mutual default." (Citations omitted.) *Westinghouse Electric Corp.* v. *Garrett Corp.*, 601 F.2d 155, 158 (4th Cir. 1979); see also *United States* v. *Hamilton Enterprises Inc.*, 711 F.2d 1038, 1048 (Fed. Cir. 1983) ("this is a case of mutual fault to the extent that neither party is entitled to recover on the claims asserted against the other"); 1 Restatement, Contracts § 274, commentary, p. 402 (1932)[13] ("[t]he law excuses a contracting party from performing his promise for a variety of reasons—infancy, insanity, impossibility caused in certain ways; but however blameless in law and fact a party to a contract may be in failing to perform his promise, if he does fail he should not have what is promised in exchange for his performance"). In the present case, the trial court's determination that both Eleanor and the defendant had materially breached the terms of the settlement agreement, were unwilling to perform their obligations, and, therefore, that neither party could recover on their breach of the settlement agreement claims is supported by ample evidence in the record, and was not clearly erroneous. See *Frillici* v. *Westport*, supra, 264 Conn. 277.

The defendant claims, however, that, even if the settlement agreement is not enforceable, Eleanor Smith's promise to make a new will was expressly and unambiguously independent of the other obligations in the settlement agreement. In support of this claim, the defendant cites paragraph 10 A of the settlement agreement, which

---

[13] Section 274 of the Restatement of Contracts (1932) provides: "(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge.

"(2) The rule of Subsection (1) is applicable though the failure of performance is not a violation of legal duty."

provides in relevant part: "[T]his covenant to make a will shall be independent of all other covenants and undertakings contained in this [a]greement and shall be independently enforceable, regardless of the claimed or actual invalidity or unenforceability of any other term or provision of this [a]greement. . . ." In response, the plaintiff characterizes this language as "nothing more than a boilerplate severability clause in the event that any other terms of the [s]ettlement [a]greement were ultimately found invalid or unenforceable." We agree with the plaintiff.

In asserting this claim, the defendant focuses specifically on the statement contained in paragraph 10 A of the settlement agreement that "this covenant to make a will shall be independent of all other covenants and undertakings contained in this [a]greement and shall be independently enforceable . . . ." Standing alone, this language may tend to support the defendant's claim. In paragraph 10 A of the settlement agreement, however, that language is modified by the remaining portion of the sentence: "regardless of the claimed or actual invalidity or unenforceability of *any other term or provision of this [a]greement.* . . ." (Emphasis added.) Addressing the same claim from the defendant, the trial court concluded that "[t]his clause . . . addresses the situation where certain terms in the [a]greement may be found invalid. It does not address or pertain to the present situation where the court has found that the defendant failed to perform his obligations and therefore cannot recover under the [a]greement." We agree with the analysis of the trial court, and we conclude that the defendant's claim that Eleanor Smith's obligation to make a will was an independent covenant is without merit.

The judgment is affirmed.

In this opinion the other justices concurred.