# GUS EFTHIMIOU, JR., EXECUTOR (ESTATE OF ELEANOR C. SMITH) *v.* JODY ROHER SMITH ET AL.
(SC 16983)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued January 12—officially released April 20, 2004

*Thomas E. Minogue, Jr.*, with whom were *Richard Meehan* and, on the brief, *Sabato P. Fiano*, for the appellant (plaintiff).

*Jonathan J. Klein*, for the appellees (defendants).

*Opinion*

NORCOTT, J. This appeal is a companion to the appeal in *Efthimiou* v. *Smith*, 268 Conn. 487, 846 A.2d 216 (2004), which we also decide today. In the present appeal, the plaintiff, Gus Efthimiou, Jr., the executor of the estate of the decedent, Eleanor C. Smith, claims that the trial court improperly found that the defendant in the companion case, Richard B. Smith, did not breach his fiduciary duties as trustee of the H.H. and E.C. Smith trust (Smith trust) through his dealings with the defendants in the present case, Jody Roher Smith, the Westville trust and Vorlon Holding, LLC. In response, the defendants claim that: (1) the plaintiff's failure to cross appeal from the judgment of the trial court in the companion appeal precludes him from successfully challenging that same judgment in the present appeal; and, in the alternative, (2) the trial court properly found that Richard did not breach his fiduciary duties. We agree with the defendants' first claim. Accordingly, we affirm the judgment of the trial court.

The following facts are relevant to our resolution of this appeal. Hyman H. Smith and Eleanor C. Smith had three sons: Richard Smith, Bruce Smith and Ronald Smith. In 1979, Jody Roher married Richard. Subsequent to their marriage, Richard became a cotrustee, along with his brother Bruce, of the Smith trust. The corpus of the Smith trust consisted of real estate holdings that Hyman had accumulated in Connecticut. Eleanor held a 46.89 percent interest in the Smith trust,

while the remaining 53.11 percent was held by Hyman prior to his death in 1979, and subsequently by a testamentary trust created by Hyman's last will and testament. Richard was named trustee of the testamentary trust.

In 1983, Ronald Smith brought an action in federal court challenging the management of the Smith trust by Richard Smith and Bruce Smith. In 1985, a settlement agreement was signed by all of the relevant parties: Eleanor Smith, individually, and as executrix of Hyman Smith's estate; Richard, individually, as cotrustee of the Smith trust, and as trustee of the testamentary trust; Bruce, individually, and as cotrustee of the Smith trust; and Ronald, individually.[1]

In 1993, at the request of Eleanor Smith, Richard Smith created the Westville trust in anticipation of receiving the proceeds of a life insurance policy held by Eleanor. Jody Roher Smith was named sole trustee of the Westville trust. Upon the death of Eleanor in February, 1994, Richard conveyed approximately $450,000 of the proceeds from Eleanor's life insurance policy to the Westville trust. Between January 12, 1995, and July 19, 1995, Jody, acting as trustee of the Westville trust, made sixteen separate loans to Richard, as trustee of the Smith trust. The total amount of money loaned by Jody was $407,250. In return for each separate loan, Richard, as trustee of the Smith trust, gave the Westville

---

[1] According to the terms of the settlement agreement, Eleanor Smith agreed to make a will in favor of Richard Smith and Bruce Smith, bequeath to them her entire interest in the Smith trust, and execute her power of appointment under the testamentary trust in favor of Richard and Bruce. In exchange, Richard and Bruce agreed to create a new inter vivos trust for the sole benefit of Eleanor and Ronald Smith. This new trust would be funded by $1,000,000 from the Smith trust. In addition, Richard and Bruce agreed to: (1) provide a separate bank account, solely in Eleanor's name, and initially fund it with $50,000; (2) provide Eleanor with $100,000, prorated monthly, on an annual tax free basis; and (3) provide Eleanor with annual distributions of 5 percent of the corpus of the Smith trust.

trust a promissory note requiring repayment within sixty days. None of the sixteen promissory notes were ever repaid by the Smith trust.

On October 21, 1996, Jody Roher Smith, acting as trustee of the Westville trust, instituted a civil action to collect the unpaid notes from Richard Smith, as trustee of the Smith trust. Richard did not assert any defense on behalf of the Smith trust in the action, and judgment was subsequently rendered for the Westville trust in the amount of $482,578.34. On March 10, 1997, the Westville trust filed a judgment lien against four properties owned by the Smith trust that were located in Milford. On November 14, 1997, Richard and Jody were divorced. From January 1, 1998, to June 15, 1998, despite not having acquired legal title to the liened properties, Jody made payments to the city of Milford for taxes due and owing on those properties.

In February, 1998, Jody Roher Smith formed Vorlon Holding, LLC, a domestic limited liability company, naming herself as the sole member. Subsequently, Jody assigned the judgment lien on the Smith trust property from the Westville trust to Vorlon Holding, LLC. On July 24, 1998, Jody, as trustee of the Westville trust, entered into a settlement agreement with Richard Smith, as trustee of the Smith trust, concerning the judgment obtained by the Westville trust. Pursuant to the terms of that agreement, the Smith trust transferred two of the four liened properties to Vorlon Holding, LLC, and the Westville trust released the Smith trust from any additional liability on the judgment.

The following procedural history is also relevant to our resolution of this appeal. On August 13, 1996, the plaintiff brought an action against Richard Smith,[2] claiming that he had breached the terms of the settle-

[2] Bruce Smith died in 1996, at which time Richard Smith became the sole remaining trustee of the Smith trust.

ment agreement, and had breached his fiduciary duties under both the settlement agreement and the Smith trust. More specifically, the plaintiff alleged that Richard had breached his fiduciary duties to the Smith trust in that he: (1) dissipated the assets of the Smith trust, all of which were lost in foreclosure or transferred by Richard, as trustee, to himself, individually, or to entities created by Richard on behalf of Jody Roher Smith; and (2) impaired the earning rights of Eleanor Smith's estate by using entities, including the Westville trust and Vorlon Holding, LLC, to siphon money out of the Smith trust.

On October 20, 1999, the plaintiff brought a separate action against Jody Roher Smith, individually, as trustee of the Westville trust, and as the sole member of Vorlon Holding, LLC, alleging that she had aided and abetted Richard Smith in removing assets from the Smith trust and placing them under their personal control. The plaintiff sought monetary damages, as well as a constructive trust over the property transferred to Vorlon Holding, LLC, by the Smith trust. The plaintiff's action against the defendants was consolidated for trial with the action pending against Richard. The trial court found in the companion case that Richard had breached his fiduciary duties to the Smith trust through various financial transactions, all of which were unrelated to Jody, the Westville trust or Vorlon Holding, LLC. The trial court also found, however, that Richard *had not* breached his fiduciary duties to the Smith trust when he obtained loans from the Westville trust, or when he settled the Westville trust action by transferring several properties to Vorlon Holding, LLC. In sum, the trial court found that the only breaches of fiduciary duties committed by Richard were entirely unrelated to Jody, the Westville trust and Vorlon Holding, LLC. Accordingly, the trial court ordered that, "[b]ased on this court's June 6, 2002 memorandum of decision in the

consolidated case of [*Efthimiou* v. *Richard Smith*], judgment is entered in favor of the defendant[s] . . . ." The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

In his preliminary statement of the issues filed pursuant to Practice Book § 63-4, the plaintiff submitted the following issue: "Whether the trial court erred in concluding that the [d]efendants did not aid and abet a breach of fiduciary duty by Richard B. Smith when such conclusion was factually unsupported by the evidence at trial?" The trial court never made a specific determination as to whether the evidence supported a finding that the defendants *actually had aided and abetted* Richard in breaching his fiduciary duties. Instead, the trial court rendered judgment for the defendants in the present case based entirely on the judgment in the companion case that Richard *had not breached his fiduciary duties* to the Smith trust when dealing with Jody Roher Smith, the Westville trust and Vorlon Holding, LLC. Therefore, the plaintiff's preliminary statement of the issues in the present appeal improperly focused on a finding that was never made by the trial court, namely, whether the defendants in the present case actually aided and abetted Richard.

The plaintiff corrected this mistake in his brief, however, by restating the issue as whether "[t]he trial court erred in concluding that Richard Smith did not breach his fiduciary duty as trustee through his dealings with the defendants when Richard failed to prove the fairness and propriety of his conduct by clear and convincing evidence." This formulation of the issue properly focuses on the propriety of the trial court's initial finding concerning Richard's conduct that the defendants in the present appeal allegedly aided and abetted. Furthermore, this formulation demonstrates that the defendants' derivative liability for *aiding and abetting* flows

directly from the trial court's underlying finding concerning Richard's direct liability for breach of fiduciary duty. See, e.g., *Marshak* v. *Marshak*, 226 Conn. 652, 668, 628 A.2d 964 (1993) (civil action of aiding and abetting cannot stand alone and depends upon existence of valid underlying cause of action); *Halberstam* v. *Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983) ("[a]iding-abetting includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation"). Therefore, before the defendants can be held liable for aiding and abetting, the plaintiff must establish that Richard breached his fiduciary duties to the Smith trust when dealing with Jody Roher Smith, the Westville trust or Vorlon Holding, LLC. In the companion case, however, we have affirmed the judgment of the trial court, and the plaintiff failed to raise that issue in that appeal. See *Efthimiou* v. *Smith*, supra, 268 Conn. 492 n.5. Because the plaintiff has chosen to appeal that issue only through the present case, the defendants claim that the doctrine of res judicata precludes the plaintiff from relitigating that issue in the present appeal. The defendants' claim, therefore, is more properly viewed as one invoking the related doctrine of collateral estoppel, or issue preclusion. Although not specifically briefed by the defendants, we conclude that the doctrine of defensive collateral estoppel precludes the plaintiff from relitigating the specific issue of whether Richard breached his fiduciary duties to the Smith trust when dealing with the defendants in the present appeal.[3]

[3] Because the defendants did brief the issue of res judicata, their failure specifically to brief or raise the issue of collateral estoppel does not prevent this court from applying it to the facts of the present case. See *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 36 n.15, 694 A.2d 1246 (1997) (while not raised by plaintiff or third party defendant, trial court properly

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and *of facts* or *issues thereby litigated* as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or which might have been made." (Citations omitted; emphasis added.) *Wade's Dairy, Inc.* v. *Fairfield*, 181 Conn. 556, 559–60, 436 A.2d 24 (1980). "Res judicata, as a judicial doctrine . . . should be applied as necessary to promote its underlying purposes. These purposes are generally identified as being (1) to promote judicial economy by minimizing repetitive litigation; (2) *to prevent inconsistent judgments which undermine the integrity of the judicial system*; and (3) to provide repose . . . ." (Emphasis added; internal quotation marks omitted.) *Statewide Grievance Committee* v. *Presnick*, 216 Conn. 135, 139, 577 A.2d 1058 (1990).

"Claim preclusion (res judicata) and issue preclusion (collateral estoppel) have been described as related ideas on a continuum." (Internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373, 727 A.2d 1245 (1999). More specifically, collateral estoppel, or issue preclusion, is that aspect of res judicata that prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. *Cumberland*

considered collateral estoppel because related doctrine of res judicata was raised, and defendant was given opportunity to respond). Although the defendants raised the defense of res judicata in their brief, the plaintiff chose not to file a reply brief. Accordingly, we find that the plaintiff is not prejudiced by our consideration of either res judicata, or the related doctrine of collateral estoppel.

*Farms, Inc.* v. *Groton*, 262 Conn. 45, 58, 808 A.2d 1107 (2002); *R & R Pool & Patio, Inc.* v. *Zoning Board of Appeals*, 257 Conn. 456, 466, 778 A.2d 61 (2001). "An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered. F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19." (Emphasis in original; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, supra, 374.

It is clear that any liability of the defendants to the plaintiff in the present action is derivative of Richard Smith's liability to the plaintiff. It is also clear that Richard's liability to the plaintiff for his dealings with the defendants was "properly raised in the pleadings or otherwise, submitted for determination, and in fact determined" in the companion case. (Internal quotation marks omitted.) Id. Further, that determination was essential to the judgment in the companion case, and it remains unchallenged. See *Efthimiou* v. *Smith*, supra, 268 Conn. 492 n.5. Accordingly, we conclude that Richard's liability to the plaintiff was actually litigated and necessarily determined in the companion case and, therefore, that the doctrine of collateral estoppel precludes the plaintiff from relitigating that issue in the present appeal.

The judgment is affirmed.

In this opinion the other justices concurred.