ROBERT B. BARTON *v.* CITY OF NORWALK
(AC 31113)

DiPentima, C. J., and Espinosa and West, Js.

Argued April 25—officially released October 4, 2011

*Linda M. Guliuzza,* assistant corporation counsel, with whom, on the brief, was *Robert F. Maslan, Jr.,* corporation counsel, for the appellant (defendant).

*Elliott B. Pollack,* with whom was *Megan Youngling Carannante,* for the appellee (plaintiff).

*Opinion*

ESPINOSA, J. The defendant, the city of Norwalk, appeals from the judgment of the trial court denying its motion for summary judgment against the plaintiff, Robert B. Barton. The defendant claims that the court improperly concluded that the plaintiff's inverse condemnation action was not precluded by (1) the existence of a judgment in a related eminent domain proceeding, (2) the doctrine of res judicata and (3) the

doctrine of collateral estoppel.[1] We agree with the trial court that the motion for summary judgment was not supported by any of the theories advanced by the defendant. Accordingly, we affirm the judgment of the trial court.

The relevant facts and procedural history of the case can be summarized as follows. The plaintiff owned property at 65 South Main Street and 70 South Main Street in Norwalk. The 65 South Main Street property served as a parking lot for the 70 South Main Street property. On February 26, 2002, the defendant exercised its eminent domain authority over the property at 65 South Main Street. An action to determine the value of the condemned property followed. During the course of the action, the plaintiff twice attempted to amend his pleadings to reflect the loss in value of 70 South Main Street resulting from the taking of 65 South Main Street. In both instances, the defendant objected to the amendments. Ultimately, the court sustained the defendant's objections and did not allow the amendments. After a trial to determine the value of 65 South Main Street, the court, in its memorandum of decision dated January 27, 2009, ordered the defendant to pay the plaintiff the difference between the fair market value that the court calculated and the amount initially paid to the plaintiff, plus interest.

In addition to the previously described condemnation proceeding, the plaintiff simultaneously pursued the present inverse condemnation action[2] regarding the

---

[1] For the sake of consistency, we will use the terms "res judicata" and "collateral estoppel" as opposed to "claim preclusion" and "issue preclusion."

[2] "[A] regulatory taking—also known as inverse condemnation—occurs when the purpose of government regulation and its economic effect on the property owner render the regulation substantially equivalent to an eminent domain proceeding and, therefore, require the government to pay compensation to the property owner. *Southview Associates, Ltd.* v. *Bongartz*, 980 F.2d 84, 93 n.3 (2d Cir. 1992), cert. denied, 507 U.S. 987, 113 S. Ct. 1586, 123 L. Ed. 2d 153 (1993); see *First English Evangelical Lutheran Church*

property at 70 South Main Street. The plaintiff filed his complaint in this action on November 17, 2003, shortly after the court denied his second attempt to amend his pleadings in the eminent domain proceeding. The defendant moved for summary judgment in the inverse condemnation action on March 4, 2009. Because the eminent domain proceeding had concluded and resulted in a judgment in favor of the plaintiff, the defendant claimed that the plaintiff had received just compensation for the taking of 65 South Main Street and, therefore, could not pursue an inverse condemnation action. The court denied this motion on May 11, 2009, and the defendant appealed on May 27, 2009.[3] Additional facts will be set forth as necessary.

Practice Book § 17-49 provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and [when] the moving party is entitled to judgment as a matter of law." Our Supreme Court has explained that "[i]n deciding a motion for

v. *Los Angeles*, 482 U.S. 304, 315, 107 S. Ct. 2378, 96 L. Ed. 2d 250 (1987) (landowner entitled to bring action in inverse condemnation as result of self-executing character of takings clause). . . . *Cohen* v. *Hartford*, 244 Conn. 206, 220, 710 A.2d 746 (1998)." (Internal quotation marks omitted.) *Miller* v. *Westport*, 268 Conn. 207, 209 n.2, 842 A.2d 558 (2004).

[3] A denial of a motion for summary judgment is typically not appealable. See *Singhaviroj* v. *Board of Education*, 124 Conn. App. 228, 232, 4 A.3d 851 (2010) ("[u]nder Connecticut law, [t]he denial of a motion for summary judgment ordinarily is an interlocutory ruling and, accordingly, not a final judgment for purposes of appeal" [internal quotation marks omitted]). If the denial of summary judgment is predicated on res judicata or collateral estoppel, however, it is considered a final judgment and may be appealed. See *Santorso* v. *Bristol Hospital*, 127 Conn. App. 606, 607 n.1, 15 A.3d 1131 ("the denial of a motion for summary judgment predicated on the doctrine of res judicata is a final judgment for purposes of appeal"), cert. granted on other grounds, 301 Conn. 918, 21 A.3d 464 (2011); *Singhaviroj* v. *Board of Education*, supra, 232 ("[a] judgment denying [a] claim of collateral estoppel is a final judgment" [internal quotation marks omitted]). As the motion for summary judgment in the present case was predicated on both a claim of res judicata and a claim of collateral estoppel, its denial is a final judgment and may be appealed.

summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Plato Associates, LLC* v. *Environmental Compliance Services, Inc.*, 298 Conn. 852, 862, 9 A.3d 698 (2010). Furthermore, "[t]he applicability of the doctrine of collateral estoppel, like the applicability of the closely related doctrine of res judicata, presents a question of law that we review de novo." *Cumberland Farms, Inc.* v. *Groton*, 262 Conn. 45, 57–58, 808 A.2d 1107 (2002). Therefore, we review all of the claims made by the defendant in support of summary judgment de novo.

I

The defendant first contends that summary judgment is appropriate because the plaintiff's inverse condemnation action is barred by the existence of a judgment in the related eminent domain proceeding. The defendant grounds this assertion in the concept of just compensation. According to the defendant, just compensation for the taking of 65 South Main Street was litigated adequately during the eminent domain proceeding. Any diminution in value of 70 South Main Street as a result of the taking of 65 South Main Street, the defendant argues, should have been litigated in the eminent domain proceeding because it merely reflects another aspect of just compensation for the taking of 65 South Main Street. The defendant, therefore, asserts that if the plaintiff felt that he had suffered damages that were not reflected in the judgment in the eminent domain proceeding, he should have appealed that decision— not pursued a separate action. We disagree.

In support of its argument, the defendant relies on *Claud-Chambers* v. *West Haven*, 79 Conn. App. 475, 830

A.2d 385, cert. denied, 266 Conn. 924, 835 A.2d 472 (2003). In that case, the plaintiffs initiated an inverse condemnation action relating to property once owned by them that had been taken by eminent domain. Id., 477. We affirmed the court's decision to grant summary judgment in favor of the defendant, noting that "[a]n inverse condemnation proceeding is a remedy to be used only when the governmental authority has not exercised its right to eminent domain." Id., 478.

In coming to this conclusion, we relied on an earlier case from this court, *Russo* v. *East Hartford*, 4 Conn. App. 271, 493 A.2d 914 (1985). In *Russo*, the plaintiffs brought an inverse condemnation action after they unsuccessfully asserted in an earlier condemnation proceeding that the value they received for the condemned property did not amount to just compensation. Id., 273. On appeal, we held that the plaintiffs were barred from bringing the inverse condemnation claim, explaining that "[w]hat the plaintiffs seek in this case is what they already sought, unsuccessfully, in [the eminent domain proceeding]." Id.

The defendant's reliance on *Claud-Chambers* and *Russo* is misplaced. In both of these cases, the eminent domain proceeding and the inverse condemnation action involved the same property. Unlike the plaintiffs in those cases, the plaintiff in the present case never initiated an eminent domain proceeding for 70 South Main Street because 70 South Main Street was not taken by eminent domain—only 65 South Main Street was. The plaintiff's inverse condemnation claim involves a different property than that which the defendant condemned through its eminent domain authority. This fact distinguishes this case from both *Claud-Chambers* and *Russo*.

Nevertheless, the defendant argues that the plaintiff is in effect seeking what he already sought in the eminent domain proceeding: just compensation for the taking of 65 South Main Street. In other words, the

defendant asserts that any loss in value of 70 South Main Street is just another injury suffered as a result of the taking of 65 South Main Street, so the plaintiff's only opportunity for redress was in the eminent domain proceeding. We do not agree with this extension of *Claud-Chambers* and *Russo*. Those cases spoke to a different issue than is presented in this case. Specifically, those cases addressed whether a plaintiff can seek damages in an inverse condemnation action for property that has been condemned. As the present case involves an inverse condemnation action regarding property that has not been condemned, the defendant's attempts to invoke *Claud-Chambers* and *Russo* are unavailing.

The defendant also argues that the plaintiff's inverse condemnation action violates the rule against double recovery. We are not persuaded. Our Supreme Court has explained that "[t]he rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury. . . . Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 111–12, 952 A.2d 1 (2008). As noted previously, however, the losses suffered by the plaintiff here are in fact two separate and distinct losses and were treated as such by the trial court.[4]

---

[4] In a hearing during the early stages of the eminent domain proceeding, the court discussed the inverse condemnation action:

"The Court: I have another part in the case, *Barton* v. *Norwalk*. It is returnable November 25, 2003. It's docket number FST-CV-03-0197963-S. I'm calling it the sixty-three file [and the] case in court is the fifty-four file. [The sixty-three] case is the one that contained a motion to consolidate with the fifty-four case, [which was] denied by [the court, *Hon. Edward R. Karazin, Jr.*, judge trial referee]. There had been a motion to reargue that matter and there may have been other matters related to consolidation in that particular case. But that file is here. I have the entirety of the file because it's here. In the case I brought that up and just quickly reviewed it. I do not know whether that has any reference to this file or any need for this to be heard at the time of trial in this case.

The court in the eminent domain proceeding did not consider, nor should it have considered, information about damages to 70 South Main Street that were irrelevant to 65 South Main Street. Given that the parallel proceedings clearly bifurcated the two issues, there is no violation of the rule against double recovery. Because the defendant has not demonstrated that the inverse condemnation action is barred by the existence of the judgment in the eminent domain proceeding, summary judgment in favor of the defendant is not proper on that ground.

## II

The defendant next claims that summary judgment is appropriate because the plaintiff's inverse condemnation action is barred by the doctrine of res judicata. Specifically, the defendant argues that, because the plaintiff had an adequate opportunity in the eminent domain proceeding to litigate his claim regarding 70 South Main Street and the two proceedings involve the same claim, the inverse condemnation action is barred by res judicata. We are not persuaded.

The doctrine of res judicata provides that "a former judgment on a claim, if rendered on the merits, is an absolute bar to a subsequent action [between the same

"[The Plaintiff's Counsel]: Your Honor, that case is scheduled for trial the first week of June next year. And it has no bearing, in my opinion, on the issues in this case.

"The Court: Okay. Is it fairly classified as an inverse condemnation case?

"[The Plaintiff's Counsel]: Yes, Your Honor.

"The Court: Counsel, you agree with that?

"[The Defendant's Counsel]: That's how I've been loosely referring to it, Your Honor, yes. It's an inverse condemnation matter that arises in a very unusual circumstance.

"The Court: Okay. Okay. The sixty-three case, if it contains any documents whatsoever that are of assistance in this case, even though the case itself may not be an issue, please make sure that you have the necessary copies of that portion of the file so that I can take a look at it."

parties] on the same claim. . . . To determine whether two claims are the same for purposes of res judicata, we compare the pleadings and judgment in the first action with the complaint in the subsequent action. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Fernandez* v. *Commissioner of Correction*, 86 Conn. App. 42, 44–45, 859 A.2d 948 (2004). This court has previously distilled the following essential elements of res judicata from our case law: (1) the initial judgment was rendered on the merits by a court of competent jurisdiction, (2) the identities of the parties to the actions are the same, (3) the parties had an adequate opportunity to litigate the matter fully and (4) the same claim, demand or cause of action is at issue. See *Tirozzi* v. *Shelby Ins. Co.*, 50 Conn. App. 680, 686–87, 719 A.2d 62, cert. denied, 247 Conn. 945, 723 A.2d 323 (1998).

The first two elements are not in dispute. There is no suggestion by either party that the court did not render a judgment on the merits in the eminent domain proceeding or that the plaintiff and the defendant were not the parties in both the eminent domain proceeding and the inverse condemnation action.

The parties strongly disagree, however, on the two remaining issues: (1) whether the plaintiff had an adequate opportunity to litigate the issues concerning 70 South Main Street in the eminent domain proceeding and (2) whether the inverse condemnation action involves the same claim, demand or cause of action as the eminent domain proceeding. We conclude that neither element is satisfied. Although the failure of a single element is sufficient to find that res judicata does not apply, we address both elements, in turn.

## A

The defendant maintains that the plaintiff had an adequate opportunity to litigate his claims regarding 70 South Main Street in the eminent domain proceeding. On the basis of the way the trial was conducted, the defendant argues that any evidence that the plaintiff wanted to submit regarding 70 South Main Street during the eminent domain proceeding was in fact admissible. Specifically, the defendant notes that during the eminent domain proceeding, one of the defendant's witnesses opined that severance damages were not available for 70 South Main Street. In response to a question about the value of 65 South Main Street, the witness responded, "[i]n my opinion, if 65 South Main and 70 South Main were an economic single entity, there was a potential for severance damage to 70 South Main. Since they were not connected, there was no severance [damage] to 70 South Main."[5] The defendant

---

[5] The relevant exchange between the witness, Norman R. Benedict, and the plaintiff's counsel went as follows:

"Q. You indicate an opinion there in the last sentence of the fifth paragraph that the appraised property—and I assume you're talking about 65 South Main Street there, Mr. Benedict. Correct? Correct? You have to answer audibly.

"A. Yes.

"Q. Thank you. Is not connected to 70 [South] Main Street.

"A. Yes.

"Q. What bearing does that observation, that conclusion, and the text immediately preceding it have on the value of the property at 65 South Main Street, sir?

"A. In my opinion, if 65 South Main and 70 South Main were an economic single entity, there was a potential for severance damage to 70 South Main. Since they were not connected there was no severance [damage] to 70 South Main.

"Q. Well, you were asked to appraise 65 South Main Street, correct?

"A. Yes.

"Q. And only 65 South Main Street.

"A. Nobody told me only.

"Q. I see.

"A. It's my job as an appraiser, if I come up with something in the course of executing the appraisal which my client needs to know and may not already know, then it's my obligation to tell them."

asserts that because this witness testified while the plaintiff's case was still open, evidence supporting the possibility of severance damages for 70 South Main Street could have been offered.

The defendant's protestations to the contrary notwithstanding, we conclude that the plaintiff did not have an adequate opportunity to litigate his claim fully. The defendant overstates the significance of the fact that, as a matter of evidence, the plaintiff might have been able to argue that the defendant's witness opened the door to a discussion of the value of 70 South Main Street. This is not the kind of "adequate opportunity" that our case law recognizes as being grounds for res judicata. Compare *Lighthouse Landings, Inc.* v. *Connecticut Light & Power Co.*, 300 Conn. 325, 351–52, 15 A.3d 601 (2011) (plaintiff had adequate opportunity where evidence presented in one action related to claims in another action about same underlying claim) and *Tirozzi* v. *Shelby Ins. Co.*, supra, 50 Conn. App. 687 (plaintiff had adequate opportunity because he could have appealed under amended law that applied retroactively) with *Connecticut National Bank* v. *Rytman*, 241 Conn. 24, 49–52, 694 A.2d 1246 (1997) (plaintiff did not have adequate opportunity where lower court "would clearly have declined to exercise [jurisdiction] as a matter of discretion" [internal quotation marks omitted]). The plaintiff had no reason to pursue a line of questioning that did not have a bearing on the valuation of 65 South Main Street, the subject of the eminent domain proceeding.

The plaintiff had attempted to amend his pleadings to include claims for damages to 70 South Main Street resulting from the taking of 65 South Main Street. Because the defendant successfully objected to these amendments, the plaintiff did not have grounds to raise

issues of damages to 70 South Main Street in the eminent domain proceeding. Although one of the defendant's witnesses answered a question about 65 South Main Street by referencing 70 South Main Street, the trial had been framed expressly by the pleadings to be about the value of 65 South Main Street. This off-point response by the witness did not, therefore, in effect transform a proceeding related to the fair market value of 65 South Main Street into a proceeding also about the fair market value of 70 South Main Street. Because the eminent domain proceeding was clearly limited to 65 South Main Street and the witness' comment did nothing to change that, we conclude that the defendant's argument that the plaintiff had an adequate opportunity to litigate his inverse condemnation claim is unpersuasive.

B

Although our conclusion that the plaintiff did not have an adequate opportunity to litigate the matter fully is sufficient to dispose of the res judicata argument, we will also consider the defendant's assertion that the inverse condemnation action involves the same claim, demand or cause of action as the eminent domain proceeding. The defendant's assertion is straightforward: both proceedings were based on the taking of 65 South Main Street, and in both proceedings, the plaintiff's claim is for just compensation for that taking. We disagree.

In determining whether two actions involve the same claim, our Supreme Court has employed a transactional test. "[T]he claim [that is] extinguished [by the judgment in the first action] includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose. What factual grouping constitutes a 'transaction,' and what groupings

constitute a 'series,' are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." (Internal quotation marks omitted.) *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 189–90, 629 A.2d 1116 (1993).

We conclude that under the transactional test, the eminent domain proceeding and the inverse condemnation action do not involve the same claim. Analyzing the facts of the case pragmatically, considering the incidental damage to 70 South Main Street in a trial with the express goal of determining the fair market value of 65 South Main Street would not conform to either party's expectations. It is unlikely that the plaintiff, who unsuccessfully attempted to amend his pleadings to include a claim related to 70 South Main Street, would expect the eminent domain proceeding to resolve both issues. Additionally, the defendant did not expect the eminent domain proceeding to address any claim of damages to 70 South Main Street. In its objection to the plaintiff's initial motion to amend his pleadings, the defendant asserted that such an action would be "extremely prejudicial" to the defendant. The two injuries were clearly connected in space and time, but holding a trial for both would not be convenient as each property would require separate appraisals and different facts would be operative in the valuation process of each property. On balance, it is apparent that the two proceedings involved very different claims, the parties were aware of and relied on the distinct role of each proceeding, and the transactional test is not satisfied in this case. Therefore, we conclude that the defendant's assertion that the inverse condemnation action involves

the same claim, demand or cause of action as the eminent domain proceeding is without merit.

### III

The defendant's final contention is that summary judgment is appropriate because the plaintiff's inverse condemnation action is barred by the doctrine of collateral estoppel. The issue in the eminent domain proceeding, the defendant asserts, was the just compensation due to the plaintiff for the taking of 65 South Main Street. The defendant argues that because the highest and best use of 65 South Main Street was necessarily determined in the eminent domain proceeding, the issue of just compensation for the taking has already been litigated. Therefore, the doctrine of collateral estoppel, according to the defendant, precludes the plaintiff from making a claim for additional compensation in the form of an inverse condemnation action. This claim is also without merit.

The doctrine of collateral estoppel "prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." (Citations omitted; internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 499, 506–507, 846 A.2d 222 (2004).

Collateral estoppel does not apply here. The issue in the inverse condemnation action is what damage 70 South Main Street incurred as a result of losing the use of 65 South Main Street as a parking lot. This issue was not litigated in the eminent domain proceeding, as it

was excluded from the pleadings after the defendant successfully objected to the plaintiff's attempt to amend his pleadings. Due to the defendant's roadblock, the eminent domain proceeding was expressly limited to ascertaining the fair market value of 65 South Main Street. Accordingly, the defendant has not demonstrated that the inverse condemnation action is barred by the doctrine of collateral estoppel, and, therefore, summary judgment in favor of the defendant on that ground is not proper.

In conclusion, because the defendant has failed to demonstrate that summary judgment is required by (1) the existence of a judgment in the related eminent domain proceeding, (2) the doctrine of res judicata or (3) the doctrine of collateral estoppel, the court was correct to deny the defendant's motion for summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.