TOLLAND ENTERPRISES *v.* SCAN-CODE, INC.
(15466)

Borden, Berdon, Norcott, Katz and Palmer, Js.

Argued October 1—officially released November 26, 1996

*Rodger C. Boe,* with whom, on the brief, was *Donald D. Philips,* for the appellant (plaintiff).

*Dennis O. Brown,* for the appellee (defendant).

PALMER, J. The dispositive issue raised by this appeal is whether an obligor who enters into a contract of accord with its obligee is relieved of its original obligation to the obligee when the obligee breaches the accord. The plaintiff, Tolland Enterprises, leased certain commercial property to the defendant, Scan-Code, Inc. After the defendant failed to meet its payment obligation under the lease, the plaintiff instituted this action seeking to enforce the lease. The defendant raised the special defense of accord and satisfaction,

claiming that the plaintiff's refusal to honor the terms of the parties' alleged accord relieved the defendant of any further obligation to the plaintiff. The defendant also filed a counterclaim seeking damages for the plaintiff's breach of the accord and for the plaintiff's alleged violation of the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq. The trial court rendered judgment for the defendant on the complaint, concluding that the parties had entered into a binding accord and that the plaintiff's repudiation of the accord discharged the defendant from its obligation to the plaintiff, and for the plaintiff on the counterclaim, concluding that the defendant had failed to prove any damages. We conclude that the trial court improperly determined that the plaintiff's breach of the accord relieved the defendant of its obligation under the lease. Accordingly, we reverse the judgment of the trial court with respect to the complaint and remand the case to that court for a new trial on the complaint.

The facts are undisputed. The plaintiff is a general partnership that owns, manages and leases commercial real estate, and the defendant is a corporation that manufactures mail sorting equipment and provides pre-sort mail and address correction services. On June 28, 1991, the defendant leased 37,084 square feet of space from the plaintiff at the premises located at 130 Prestige Park Road, East Hartford. On September 23, 1991, the parties entered into an amendment of the lease pursuant to which the defendant agreed to pay to the plaintiff monthly rent of $15,451.67, along with certain other fees, for a period of sixty months commencing July 1, 1991. The defendant fell into arrears on its lease payments and in February, 1994, the defendant's president and chief operating officer, Robert Geckle, approached Robert Beckenstein, who managed the plaintiff's daily operations,[1] about renegotiating the terms of the lease.

---

[1] Robert Beckenstein is the son of Henry Beckenstein, the sole living partner of the plaintiff. Until September, 1994, Henry Beckenstein was also

At that time, the defendant owed the plaintiff over $200,000 in back rent.

On April 26, 1994, Geckle sent a facsimile to Beckenstein containing the following handwritten proposal: the defendant would pay $116,000 to the plaintiff during the week of May 9, 1994; the defendant would make a rent payment to the plaintiff of $15,461.67 during the week of May 23, 1994; the defendant would pay the balance of approximately $115,000 owed to the plaintiff in equal monthly installments over a twelve month period commencing June, 1994; and the parties would agree to a new landlord and tenant relationship to commence in June, 1994, the terms of which were to be finalized by the parties within four weeks. Beckenstein indicated to Geckle that the defendant's proposal was acceptable to the plaintiff.

On May 13, 1994, the defendant caused a check in the amount of $116,000 to be hand-delivered to the plaintiff. Accompanying the check was a letter from Geckle to Beckenstein that stated as follows: the defendant will pay May rent of $15,461.67 during the week of May 23, 1994; the balance of approximately $115,000 owed to the plaintiff will be paid in equal monthly installments over twelve months beginning June, 1994; and the defendant will be released from its lease at 130 Prestige Park Road effective June 1, 1994. The letter also provided that "[i]t is our current intent to relocate our Pre-Sort operations to your facility at 265 Prestige Park Road, assuming a mutually agreeable lease arrangement can be finalized. Our remaining operations will be relocated to a site yet to be determined. Until the relocation process is completed, we intend to continue to occupy and pay rent at the 130 Prestige Park Road facility at current rates and terms." Finally,

a director and officer of the defendant. All references hereinafter are to Robert Beckenstein.

the letter stated that "[a]cceptance of the enclosed pay-
ment signifies acceptance of the above agreed upon
items."

The plaintiff endorsed, deposited and cashed the
defendant's check without any protest or reservation
of rights. On May 23, 1994, however, Beckenstein called
Geckle to inform him that the plaintiff would not honor
the proposal set forth in the defendant's May 13 letter
because the letter did not accurately reflect Beck-
enstein's understanding of the parties' agreement.[2] The
defendant notified the plaintiff by letter dated May 27,
1994, that it was suspending performance of its obliga-
tion to the plaintiff in light of the plaintiff's refusal to
honor the terms set forth in the May 13 letter. The
plaintiff commenced this action shortly thereafter.

The plaintiff's complaint, which seeks damages, costs
and attorney's fees, is in three counts. The first count
alleges a breach by the defendant of the parties' original
amended lease. The second count alleges that if the
parties had reached an accord as claimed by the defend-
ant,[3] then the defendant breached that accord by failing
to render performance in compliance with its terms.
The third count, also predicated upon a finding by the
trial court of an enforceable accord, alleges that the

---

[2] At trial, Beckenstein testified that, contrary to the terms of the defend-
ant's May 13 letter, the plaintiff had not agreed to release the defendant
from its obligation under the existing lease prior to the successful negotiation
of a new lease agreement between the parties. With respect to the plaintiff's
acceptance of the defendant's check, Beckenstein testified that he left the
state on a business trip prior to the check's arrival on May 13, and that he
did not return to his office until May 23, 1994. Beckenstein further testified
that he had been expecting delivery of the check and that he had instructed
his staff to deposit the check immediately upon its arrival at the plaintiff's
offices. According to Beckenstein, he did not become aware of the terms
of the May 13 letter until he returned to his office on May 23, at which time
he notified the defendant that the proposal contained in the May 13 letter
was unacceptable to the plaintiff.

[3] The plaintiff, however, has at all times denied that it entered into an
accord with the defendant.

defendant has been unjustly enriched by virtue of its failure to perform under the accord.

In its answer to the complaint, the defendant raised the defense of accord and satisfaction, claiming in its first special defense that the "[p]laintiff has entered into an agreement with [the d]efendant whereby [the d]efendant satisfied in full and discharged all obligations pursuant to the commercial lease referenced in the [c]omplaint." In its second, related special defense, the defendant claimed that the "[p]laintiff has breached and failed to perform in good faith . . . the new agreement which satisfied the obligations of the commercial lease referenced in the [c]omplaint, [and] any alleged failure of [the d]efendant to perform in full the obligations of said new agreement as it relates to the premises in question has been directly caused by [the p]laintiff's acts making performance by [the d]efendant impossible."[4] The defendant also filed a counterclaim alleging a breach of the accord and a violation of CUTPA.

A trial to the court ensued. At the conclusion of the trial, the court found that the plaintiff's negotiation of the defendant's $116,000 check constituted its acceptance of the defendant's May 13 proposal and, furthermore, that the "plaintiff's acceptance of [the] defendant's check was an accord and satisfaction."[5] The trial court further concluded that the plaintiff's repudiation of the accord discharged the defendant from any liability to the plaintiff.[6] With respect to the

---

[4] In its third special defense, the defendant alleged that the parties' commercial lease was a voidable, unfair contract under General Statutes § 33-323, and in its fourth special defense, the defendant alleged that the plaintiff's complaint failed to state a claim upon which relief may be granted.

[5] In light of the trial court's conclusion, it did not reach the defendant's third and fourth special defenses. See footnote 4.

[6] Accordingly, the trial court also rejected the plaintiff's claim for costs and attorney's fees. The trial court, however, did award attorney's fees to the plaintiff stemming from a related but separate summary process action

defendant's allegation of breach of the accord in its counterclaim, the trial court concluded that although the plaintiff had breached the parties' agreement, the defendant had failed to establish any damages resulting therefrom.[7]

On appeal, the plaintiff challenges the trial court's conclusion that the parties entered into an enforceable accord.[8] The plaintiff further claims that even if the trial court properly concluded that the parties had entered into a binding accord, the court improperly concluded that there had been a satisfaction of the accord because the defendant never fully performed under that agreement. Finally, the plaintiff maintains that even if it did breach an accord with the defendant, that breach did not entitle the defendant to a discharge of its obligation under the lease but, rather, to specific performance of the accord, a remedy that the defendant has not sought. We need not decide whether the trial court properly concluded that the parties entered into an accord because, even if we assume, arguendo, that they did enter into an accord, (1) a breach of the accord by the plaintiff entitled the defendant to specific performance of the accord and any consequential damages rather than to a discharge of the defendant's obligation under the lease, (2) the defendant did not seek such performance, and (3) the trial court specifically found

brought by the plaintiff against the defendant. For reasons that are not apparent from the record, that award was made part of the judgment in this action. That aspect of the judgment, however, is not a subject of this appeal.

[7] The trial court did not expressly address the second count of the defendant's counterclaim alleging a CUTPA violation. The defendant, however, did not seek an articulation of the trial court's judgment, nor has it filed a cross appeal.

[8] Specifically, the plaintiff claims that the trial court improperly concluded that the parties had entered into an enforceable accord because: (1) the alleged accord was not supported by consideration; (2) the trial court's determination is contrary to the express provisions of the lease; and (3) the terms of the defendant's May 13, 1994 proposal differ materially from the terms agreed to by the plaintiff on April 26, 1994.

that the defendant failed to prove any damages. Therefore, whether or not the parties entered into an enforceable accord, the defendant remains potentially liable under the lease.

" 'An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty.' 2 Restatement (Second), Contracts § 281 (1981); *W. H. McCune, Inc.* v. *Revzon*, 151 Conn. 107, 109, 193 A.2d 601 (1963)." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 809, 626 A.2d 729 (1993); see also *Blake* v. *Blake*, 211 Conn. 485, 491, 560 A.2d 396 (1989); *County Fire Door Corp.* v. *C. F. Wooding Co.*, 202 Conn. 277, 281, 520 A.2d 1028 (1987). Thus, "[u]ntil performance of the accord, the original duty is suspended unless there is such a breach of the accord by the obligor as discharges the new duty of the obligee to accept the performance in satisfaction."[9] 2 Restatement (Second), supra, § 281 (2).

We have previously stated that if there is a breach of the accord by the obligor, "the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord. 2 Restatement (Second), [supra, § 281]; see also *Montgomery* v. *Smith*, 40 Conn. Sup. 358, 361, 499 A.2d 444 (1985); *Girasulo* v. *Consolidated Motor Lines, Inc.*, 5 Conn. Sup. 245, 247–48 (1937)." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*,

---

[9] "Because the obligor's original duty is not satisfied until the accord is *performed*, an accord differs from a substituted contract, under which a *promise* of substituted performance is accepted in satisfaction of the original duty." (Emphasis added.) 2 Restatement (Second), supra, § 281, comment (e); see also *Halloran* v. *Fischer*, 126 Conn. 44, 45–46, 9 A.2d 290 (1939). Although the defendant's brief includes several cases involving substituted contracts, the defendant has never claimed that the parties' alleged agreement constituted a substituted contract rather than an accord and satisfaction.

supra, 225 Conn. 809. Although we have never expressly considered the consequences of a breach of an accord by the obligee, the Restatement (Second) of Contracts sets forth the applicable principles. Section 281 (3) of the Restatement (Second) provides that "[b]reach of the accord by the obligee does not discharge the original duty, but the obligor may maintain a suit for specific performance of the accord, in addition to any claim for damages for partial breach." This rule is supported by the weight of legal and scholarly authority. See, e.g., *Warner* v. *Rossignol*, 513 F.2d 678, 683 (1st Cir. 1975); *Girasulo* v. *Consolidated Motor Lines, Inc.*, supra, 246–47; *Peters* v. *Wallach*, 366 Mass. 622, 628, 321 N.E.2d 806 (1975); *Corrigan* v. *Payne*, 312 Mass. 589, 592, 45 N.E.2d 829 (1942); *Dobias* v. *White*, 239 N.C. 409, 414, 80 S.E.2d 23 (1954); *Ladd* v. *General Ins. Co.*, 236 Or. 260, 266, 387 P.2d 572 (1963); J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 21-5, pp. 870–71; 15 S. Williston, Contracts (3d Ed. Jaeger 1972) § 1843, pp. 521–23, and § 1845, pp. 526–27.[10]

Even if we assume, arguendo, that the parties entered into an enforceable executory accord, application of the Restatement rule to the undisputed facts of this case makes its clear that the plaintiff's breach of the accord did not serve to relieve the defendant of its obligation under the lease. Because the plaintiff's repudiation of the accord prevented the defendant from completing its performance thereunder, there could be

---

[10] Furthermore, comment (c) to § 281 of the Restatement (Second) of Contracts provides: "Effect of obligee's breach. If a breach of the accord by the obligee prevents the obligor from performing the accord, the original duty is not discharged, but the obligor has a claim for damages for total breach of the accord. However, the obligor's damages cannot be measured simply by his original duty, but must take account of what he has saved by not performing. To avoid imposing on the innocent obligor the burden of proving these damages, specific performance of the accord will be granted unless for some reason that remedy is inappropriate. In addition, the obligor may have a claim for damages for partial breach."

no satisfaction of the accord. See, e.g., *Dobias* v. *White,* supra, 239 N.C. 414 ("[i]f the creditor breaks the agreement for the accord, the debtor's original obligation to him is not discharged, for the creditor's breach prevents the performance of the accord"). Contrary to the determination of the trial court, therefore, the defendant failed as a matter of law to establish its special defense of accord and satisfaction.

The defendant nevertheless could have obtained a discharge of its obligation under the lease had it sought specific performance of the accord, a remedy to which it was entitled along with any damages it incurred as a result of the plaintiff's breach of the accord. The defendant, however, did not seek specific performance of the accord, claiming instead that the plaintiff's repudiation of the accord excused it from any further obligation to the plaintiff. Because the defendant never fully performed under the accord, it was not entitled to a discharge of its obligation under the lease.[11]

The trial court, having determined that the defendant had established the existence of an accord and satisfaction, improperly concluded that the "plaintiff lost its right to make [a claim for breach of the lease]" and, accordingly, rendered judgment for the defendant on the complaint. Because the trial court sustained the

---

[11] The trial court cited *Martin* v. *Kavanewsky,* 157 Conn. 514, 518–19, 255 A.2d 619 (1969), and *Pullman, Comley, Bradley & Reeves* v. *Tuck-it-Away, Bridgeport, Inc.,* 28 Conn. App. 460, 465, 611 A.2d 435, cert. denied, 223 Conn. 926, 614 A.2d 825 (1992), in support of its conclusion that the plaintiff's anticipatory breach of the accord discharged the defendant from its obligations thereunder. Although it is true, as *Kavanewsky* and *Tuck-it-Away, Bridgeport, Inc.,* explain, that an anticipatory breach of a contract generally excuses the nonbreaching party from further performance under the contract, neither of those two cases involved the breach of an accord, "the essence [of which is] that the original duty is not satisfied *until the accord is performed* . . . ." (Emphasis added.) 2 Restatement (Second), supra, § 281, comment (a).

defendant's special defense of accord and satisfaction, the plaintiff is entitled to a new trial on its complaint.

On retrial, the defendant will have the opportunity to establish its two remaining special defenses. See footnote 4. The defendant, however, having elected not to seek specific performance of the alleged accord, is foreclosed from raising that claim on retrial. Furthermore, having failed to file a cross appeal from the trial court's determination that it did not prove any damages arising out of the plaintiff's alleged breach of the accord, the defendant is also precluded from relitigating its damages claim. See footnote 6.

The judgment is reversed in part and the case is remanded for a new trial on the complaint, in accordance with the preceding paragraph.

In this opinion the other justices concurred.