******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOHN MORGILLO *v.* EMPIRE PAVING, INC.
(AC 36639)

Gruendel, Alvord and Flynn, Js.

*Argued February 19—officially released July 7, 2015*

(Appeal from Superior Court, judicial district of New
Haven at Meriden, Oliver, J.)

*David L. Weiss*, for the appellant (defendant).

*Jeremiah J. O'Connor*, for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant, Empire Paving, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, John Morgillo. On appeal, the defendant claims that the trial court improperly (1) found that the defendant did not comply with the terms of the parties' settlement agreement, (2) found that the defendant failed to prove its special defense, (3) rendered judgment in favor of the plaintiff on the first and second counts of his amended complaint, and (4) awarded damages to the plaintiff based on the cost of repair of the plaintiff's driveway rather than the diminution in value of the plaintiff's property. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In June, 2005, the plaintiff and the defendant entered into a contract, in which the defendant agreed to repair and repave the driveway at the plaintiff's residential property at 8 Cooke Road in Wallingford at a cost of $27,475.20. The parties further agreed that the plaintiff, through his employer, Brothers Pool Enterprises, Inc., would pay for the repairs to his driveway by installing a swimming pool for Earl Tucker, the vice president of the defendant, at his property in Branford. The defendant subsequently completed the repair work on the plaintiff's driveway and the plaintiff installed the pool for Tucker. At the time the parties entered into the contract, and on the date the defendant completed the repair work, the plaintiff's driveway was bordered by Belgian blocks.

Within a week of the repair work completed by the defendant, the plaintiff noticed problems with the condition of his driveway, including "[c]racking, skipped spots, [and] dents." The plaintiff also observed potholes and "crumbling" along the edges of the driveway. The plaintiff complained to the defendant about the condition of his driveway, and the defendant reduced the cost of the driveway repairs from $27,475.20 to $22,500. The plaintiff also asked the defendant about correcting the problems with the driveway. The defendant offered to repair the driveway again at an additional cost of $2250. The plaintiff did not agree to the defendant's proposal.

The plaintiff then hired legal counsel to assist him in his dispute with the defendant. The plaintiff's counsel contacted the defendant regarding the problems with the driveway. The defendant responded in a letter dated May 17, 2006, in which it asserted that the problems with the plaintiff's driveway had occurred because the Belgian blocks along the edges of the driveway had been improperly set.

In January, 2007, the plaintiff brought this action against the defendant in a two count complaint, alleging breach of contract and negligence. In September, 2009,

the parties reached a settlement agreement by which the plaintiff agreed to reset the Belgian blocks along the edges of his driveway at his own expense, and the defendant agreed to complete, at its own expense, the "work necessary to repair and resurface the existing paved driveway with a chip-sealed surface and seal the [Belgian blocks] to reasonably ensure that future erosion between the [Belgian blocks] and the driveway will not re-occur." Shortly thereafter, the plaintiff reset the Belgian blocks, and the defendant sealed them. The defendant completed the work of repairing and resurfacing the driveway, including the chip sealed surface, in the spring of 2010. After the defendant completed the second set of repairs pursuant to the settlement agreement, the plaintiff once again noticed problems with the condition of his driveway. The potholes reappeared and "[t]ar was coming through the stone" in the chip sealed surface.

In October, 2011, the plaintiff filed an amended complaint. In counts one and two, the plaintiff alleged breach of contract and negligence with respect to the original contract between the parties. In counts three and four, he alleged breach of contract and negligence with respect to the settlement agreement. The defendant filed an answer and special defense to the plaintiff's amended complaint, alleging that the damage to the plaintiff's driveway had been caused by the plaintiff's failure to properly install the Belgian blocks. The defendant alleged that the improper installation of the Belgian blocks caused the surface of the driveway to become "undermined after exposure to rain and other elements and resulted in an erosion of the driveway surface."

A trial was held before the court on May 22 and August 28, 2013. At trial, the plaintiff presented the testimony of two expert witnesses. Lawrence Wild, who was qualified as an expert witness in asphalt driveway construction, testified that he had inspected the plaintiff's driveway in April, 2009, after the defendant had completed the first set of repair work. During the inspection, he observed "some high spots and along the Belgian blocks, there was a lot of depressions and it was all cracked. And on the top there was some—it was broken up." He also testified that the defendant had not installed six inches of process stone and two inches of bituminous concrete as promised in the original contract. He provided a quote in the amount of $36,550 to grind down the plaintiff's existing driveway and to repave it with asphalt instead of a chip sealed surface.

Christopher Bowker, who was qualified as an expert witness in hot mix asphalt application and chip sealing, testified that he had inspected the plaintiff's driveway in November, 2011, after the second set of repairs pursuant to the settlement agreement. During his inspection,

he observed "numerous scuffing, scuff marks" at the top of the driveway, and as he proceeded down the driveway, he noticed "some areas [of] bleeding . . . and also other areas where stone had lost its bond from the asphalt." In addition, he noticed that "along the . . . right-hand side up against the [Belgian blocks], the stone that had been installed, there were many areas that had settled" and "[d]epressions and potholes were beginning to form . . . ." Bowker further testified that, based on conversations with the plaintiff and his own inspection of the driveway, it was his opinion that the second set of repairs completed by the defendant had not been performed in accordance with industry standards. He also opined that the entire driveway would have to be removed and replaced in order to correct all the problems he had observed. On cross-examination, he testified that it was "possible" that "any gaps in the [Belgian blocks] or between the [Belgian blocks] and the driveway surface" could cause water erosion along the edges of the driveway.

The defendant presented the testimony of Tucker, who was qualified as an expert witness in asphalt application and chip sealing. Tucker testified that the defendant had followed the appropriate procedures during the first and second set of repairs. He also testified that, before the defendant had done any work to the plaintiff's driveway, the driveway had begun to erode along the edges due to the improper installation of the Belgian blocks. According to Tucker, the plaintiff reset the Belgian blocks once after the first set of repairs by the defendant and then again after the second set of repairs, but did not install them properly on either occasion. He further stated that the continuing problems with the condition of the driveway were the result of the improper installation of the Belgian blocks.

In a memorandum of decision dated March 4, 2014, the court rendered judgment in favor of the plaintiff on all four counts of the amended complaint. The court credited the testimony of the plaintiff's expert witnesses and found that the defendant had not complied with the terms of the original contract and that the defendant's second set of repairs pursuant to the settlement agreement had not been performed in accordance with industry standards. The court also found that the defendant had failed to prove its special defense concerning the Belgian blocks by a fair preponderance of the evidence. The court awarded the plaintiff $36,550 in damages in accordance with Wild's quote for removing and replacing the entire driveway with asphalt. This appeal followed.

I

The defendant first claims that the court improperly found that it did not comply with the terms of the parties' settlement agreement. The defendant argues that the settlement agreement provided only that it per-

form the second set of repairs and did not provide a specific standard of workmanship that it was required to meet. The defendant further argues that the court erroneously rendered judgment in favor of the plaintiff because the defendant performed the second set of repairs. In response, the plaintiff argues that workmanship is an implied condition in all construction and service contracts in Connecticut. He also argues that there was sufficient evidence in the record for the court reasonably to conclude that the defendant failed to perform the repairs in a workmanlike fashion.[1] We agree with the plaintiff.

We must first consider the question of whether the defendant was required to satisfy an implied condition of workmanship when it completed the second set of repairs to the plaintiff's driveway. "[A]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expediency and faithfulness the thing agreed to be done. A failure to observe any of these conditions is . . . a breach of contract. Thus, [a] cause of action for breach of contract may be based on an implied promise to exercise due care in performing the services required by the contract. Whether a contract for services is breached depends upon whether the service provider exercises or fails to exercise that degree of skill and knowledge normally possessed by those members of the trade in which the service provider is engaged who are in good standing in the same or similar communities. This implied promise is related to the implied warranty of workmanship and fitness for a particular purpose." (Footnotes omitted; internal quotation marks omitted.) 23 R. Lord, Williston on Contracts, (4th Ed. 2002) § 63:25, p. 525.

Our Supreme Court has recognized that "[a] duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. . . . A builder is under a duty to exercise that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions." (Citation omitted; internal quotation marks omitted.) *Calderwood* v. *Bender*, 189 Conn. 580, 584, 457 A.2d 313 (1983); see also *Perl* v. *Eagle's Wing, LLC*, Superior Court, judicial district of Middlesex, Docket No. CV-08-5004560-S (May 11, 2011) (51 Conn. L. Rptr. 625) ("It is an implied condition of every service contract that the service will be performed in a workmanlike manner. . . . A breach of this implied condition would be a breach of contract."[Internal quotation marks omitted.]). We therefore conclude that the defendant was required to complete the repairs to the plaintiff's driveway with that degree of care exercised by skilled individuals and businesses in the driveway repair and construction industry.

We next turn to the issue of whether the court properly found that the defendant had failed to comply with the terms of the settlement agreement. "A settlement agreement, or accord, is a contract among the parties." *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 532, 4 A.3d 288 (2010). "The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 487, 493–94, 846 A.2d 216 (2004). "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 508.

In the present case, the court found that the defendant did not complete the second set of repairs to the plaintiff's driveway in accordance with industry standards. In other words, the court found that the defendant did not exercise the requisite degree of care. In making this finding, the court credited the testimony of Bowker, one of the plaintiff's expert witnesses. After reviewing the record and making every reasonable presumption in favor of the court's ruling, we conclude that the court's finding was not clearly erroneous. There was evidence offered at trial to support the court's conclusion, and we are not left with the definite and firm conviction that a mistake has been committed. Accordingly, we further conclude that the court properly found that the defendant failed to comply with the terms of the settlement agreement.

## II

The defendant next claims that the court improperly found that the defendant failed to prove its special defense. The defendant argues that Tucker's testimony at trial established that the plaintiff's failure to install the Belgian blocks properly was an intervening cause of the damage to the driveway and precluded recovery by the plaintiff. The plaintiff argues that the court's finding that the defendant failed to prove its special defense was well supported by the evidence and was not clearly erroneous. We agree with the plaintiff.

The defendant does not claim that the court misapplied the law. Rather, it claims that the court's factual

findings were incorrect. The court's factual findings underlying the defendant's special defense are reviewed pursuant to the clearly erroneous standard. See *Monetary Funding Group, Inc.* v. *Pluchino*, 87 Conn. App. 401, 406, 867 A.2d 841 (2005). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Efthimiou* v. *Smith*, supra, 268 Conn. 493–94. "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [w]e do not examine the record to determine whether the [court] could have reached a conclusion other than the one reached. . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Internal quotation marks omitted.) *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 508.

The court found that the defendant failed to prove its special defense. After reviewing the record as a whole, we conclude that the court's finding was not clearly erroneous. The testimony of the plaintiff and the plaintiff's expert witnesses provided sufficient evidence for the court to conclude that the Belgian blocks were not the cause of the damage to the plaintiff's driveway. The defendant asserts, correctly, that Tucker provided testimony that the Belgian blocks were the cause of the damage. The court, however, did not credit Tucker's testimony and instead credited the testimony of the plaintiff's expert witnesses, concluding that, "despite the testimony of Mr. Tucker, the defendant has failed to prove its special defense by a fair preponderance of the evidence." It is the province of the trial court to determine the credibility of witnesses; *Ackerman* v. *Sobol Family Partnership, LLP*, supra, 298 Conn. 508; and the record before us reveals that the court's factual findings with respect to the Belgian blocks were supported by the evidence. We therefore conclude that the court properly found that the defendant failed to prove its special defense.

### III

We now turn to the defendant's claim that the court improperly rendered judgment in favor of the plaintiff on the first and second counts of the amended complaint, alleging breach of contract and negligence with respect to the original contract. The defendant argues that the court's rendering judgment in favor of the plaintiff on all four counts of the amended complaint violated our Supreme Court's holding in *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 809, 626 A.2d 729 (1993), which permits a party alleging breach of a settlement agreement to enforce either the settlement agreement or the original

contract. The defendant also argues, in the alternative, that the court was precluded from rendering judgment on the first and second counts of the amended complaint because the parties entered into a settlement agreement, which materially altered the contractual obligations of the parties.

The plaintiff argues that the court properly rendered judgment in his favor on all four counts of the amended complaint because, pursuant to *Audubon Parking Associates Ltd. Partnership*, he was required to prove a breach of the original contract *and* a breach of the settlement agreement in order to recover damages under the first and second counts. In response to the defendant's alternative argument, the plaintiff argues that the settlement agreement did not preclude the court from rendering judgment in his favor on the first and second counts because the defendant did not satisfy its obligations under the settlement agreement. We agree with the plaintiff.

A

The defendant first argues that the court violated our Supreme Court's holding in *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 809. In that case, our Supreme Court stated that "[a]n accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty. . . . If there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord." (Citations omitted; internal quotation marks omitted.) Id. The defendant argues that the court, in rendering judgment in favor of the plaintiff on all four counts of the amended complaint, improperly permitted the plaintiff to seek enforcement of both the original contract and the settlement agreement. We are not persuaded.

"The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Citation omitted; internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 217–18, 14 A.3d 307 (2011).

In rendering judgment in favor of the plaintiff, the court made the following ruling: "The court finds . . . that the defendant breached the settlement agreement

by [its] negligent repair and replacement of the plaintiff's driveway in 2009. The court further finds that the defendant's initial repair and replacement of the plaintiff's driveway in 2005 was negligent and a breach of the original contract . . . . The court finds that, despite the testimony of Mr. Tucker, the defendant has failed to prove its special defense by a fair preponderance of the evidence. Accordingly, the court finds for the plaintiff on all four counts of the amended complaint and further finds damages in the amount of $36,550, plus costs to be determined in a bill of costs."

Viewing the judgment as a whole, we conclude that the court did not permit the plaintiff to seek enforcement of both the original contract and the settlement agreement. Although the plaintiff made no formal election, it is evident from the judgment and the circumstances surrounding it that the court proceeded with the understanding that the plaintiff intended to seek enforcement of the original contract. The plaintiff has also argued before this court on appeal that he intended to recover under the contract.

A settlement agreement, or accord, "is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty. . . . Thus, [u]ntil performance of the accord, the original duty is suspended unless there is such a breach of the accord by the obligor as discharges the new duty of the obligee to accept the performance in satisfaction." (Citations omitted; internal quotation marks omitted.) *Tolland Enterprises* v. *Scan-Code, Inc.*, 239 Conn. 326, 333, 684 A.2d 1150 (1996). Therefore, in order to recover damages under the original contract, the plaintiff was required to prove that the defendant breached both the contract and the settlement agreement. The court's statement that it was finding in favor of the plaintiff on all four counts of the amended complaint was an acknowledgment that the plaintiff had met his burden of proof with respect to the contract *and* the settlement agreement.

The court made a single award of damages to the plaintiff in the amount of $36,550. This amount reflected the estimate offered by Wild for the cost of removing and replacing the plaintiff's driveway with asphalt, as provided for in the original contract, rather than the chip sealed surface provided for in the settlement agreement. We therefore conclude that the court awarded damages to the plaintiff only for breach of the original contract and did not award duplicative damages for breach of the settlement agreement. Accordingly, the court did not violate our Supreme Court's holding in *Audubon Parking Associates Ltd. Partnership*, as the plaintiff was permitted to seek enforcement of the original contract but not the settlement agreement.

B

The defendant also argues that the court was precluded from rendering judgment on the first and second counts of the amended complaint because the parties entered into a settlement agreement, which materially altered the contractual obligations of the parties. According to the defendant, the plaintiff waived his right to bring an action for breach of contract when he entered into the settlement agreement with the defendant. This argument is without merit.

"An accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. *Performance* of the accord discharges the original duty." (Emphasis added; internal quotation marks omitted.) Id. In the present case, the court properly found that the defendant had not satisfactorily performed its obligations under the settlement agreement. "If there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 809. Because the defendant breached the settlement agreement, the plaintiff was permitted to seek enforcement of the original contract. Accordingly, the court was not precluded from rendering judgment in favor of the plaintiff on counts one and two of the amended complaint.

IV

The defendant's final claim is that the court improperly awarded damages to the plaintiff based on the cost of repair of the plaintiff's driveway rather than the diminution in value of the plaintiff's property. The defendant argues that the damages awarded to the plaintiff by the court did not comply with our Supreme Court's holding in *Levesque* v. *D & M Builders, Inc.*, 170 Conn. 177, 181, 365 A.2d 1216 (1976). The plaintiff, on the other hand, argues that the amount of damages awarded to him was proper. We agree with the plaintiff.

"Normally, we review a court's determination of damages under an abuse of discretion standard. . . . When, however, a damages award is challenged on the basis of a question of law, our review is plenary." (Internal quotation marks omitted.) *Day* v. *Gabriele*, 101 Conn. App. 335, 346, 921 A.2d 692, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007).

In *Levesque* v. *D & M Builders, Inc.*, supra, 170 Conn. 180–81, our Supreme Court stated that "[a]s a general rule, in awarding damages upon a breach of contract, the prevailing party is entitled to compensation which will place him in the same position he would have been in had the contract been properly performed. . . . Such damages are measured as of the date of the breach. . . . For a breach of a construction contract involving defective or unfinished construction, damages are mea-

sured by computing either (i) the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste; or (ii) the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff, if construction and completion in accordance with the contract would involve unreasonable economic waste." (Citations omitted; internal quotation marks omitted.)

In the present case, the plaintiff presented evidence of the cost of repairing his driveway, and the court based its award of damages on that evidence. The defendant argues that, pursuant to *Levesque*, the plaintiff was required to also present evidence of the diminution in value of his property. The defendant further argues that the plaintiff failed to distinguish between damages suffered as a result of the breach of the original contract and damages suffered as a result of the breach of the settlement agreement. We have already determined that the damages awarded to the plaintiff by the court were properly based on the defendant's breach of the original contract, and thus the plaintiff was not required to present evidence of any damages he may have suffered as a result of the breach of the settlement agreement.

With respect to the defendant's first argument, that the plaintiff was required to present evidence of the diminution in value of his property, we are not persuaded. "The basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged. . . . The permissive language of [*Whitman Hotel Corp.* v. *Elliott & Watrous Engineering Co.*, 137 Conn. 562, 573, 79 A.2d 591 (1951)] clearly leaves the selection of the repair measure in the trial court's discretion, limited only by the two attached provisos. . . . The cost of repairs, therefore, is a proxy for diminution in value caused by damage to property. Because these are, in effect, alternative measures of damages, the plaintiff need not introduce evidence of both diminution in value and cost of repairs." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 59–60, 717 A.2d 77 (1998). Accordingly, we do not accept the defendant's argument that the plaintiff was required to present evidence of diminution in value in addition to the cost of repair.

The court may, in its discretion, substitute the cost of repair for diminution in value as long as the measure

of damages based on the cost of repair does not result in economic waste. Id. The question now before us, then, is whether the plaintiff must prove that the cost of repair will not result in economic waste, or whether the defendant must prove that it will. In *Falco* v. *James Peter Associates, Inc.*, 165 Conn. 442, 446, 335 A.2d 301 (1973), our Supreme Court held that the trial court improperly awarded damages based on the cost of repair because the court "made no finding as to the former value of the plaintiffs' property or as to whether the repairs contemplated would enhance the value of the property beyond what it was before the injury." Similarly, in *Spera* v. *Audiotape Corp.*, 1 Conn. App. 629, 634, 474 A.2d 481 (1984), this court held that the trial court improperly awarded damages based on the cost of restoration rather than diminution in value. This court noted that "[t]he burden is on the plaintiff to present evidence which affords a reasonable basis for measuring [his] loss. . . . Although it is often impossible to prove damages with mathematical exactitude, the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . This includes, in a case such as this involving extensive changes in the property, providing evidence of the relevant comparative values. . . . Although the trial court here found that the sale of the property took into account the cost of restoration, it did not find that the difference in values was equal to or approximated that figure. Moreover, it is clear that it only employed the cost of restoration rule of damages without regard to the possibility of unreasonable economic waste." (Citations omitted; internal quotation marks omitted.) Id., 633–34.

*Falco* and *Spera* indicate that the burden is on the plaintiff to prove that the cost of repair will not result in economic waste. After both *Falco* and *Spera* were decided, however, our Supreme Court stated for the first time in *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 60, that "the plaintiff need not introduce evidence of both diminution in value and cost of repairs." After *Willow Springs Condominium Assn., Inc.*, this court held in *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 531, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009), that the trial court properly awarded damages based on the cost of repair when there was "no evidence that the cost of replacing the roof exceeded the value of the property or that the replaced roof enhanced the value of the property over what it was before it was damaged."

Although *Falco* and *Spera* required the plaintiff to prove the absence of economic waste, the subsequent appellate decisions in *Willow Springs Condominium Assn., Inc.*, and *Centimark Corp.* shifted the burden of proving economic waste to the defendant. In light of those appellate decisions, we conclude that the

defendant bears the burden of proving that the cost of repair will result in economic waste. There is no evidence in the record before us that the cost of repairing the plaintiff's driveway exceeded the former value of the plaintiff's property or that the repairs would enhance the value of the property over what it was before it was damaged. Because the defendant did not present any evidence that the cost of repairing the driveway would result in economic waste, it was within the court's discretion to award damages based on the cost of repair rather than diminution in value of the property. We therefore conclude that the court properly awarded damages to the plaintiff based on the cost of repairing his driveway.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also argues that the defendant cannot claim on appeal that it complied with the terms of the settlement agreement because it did not specially plead the defense of accord and satisfaction as required by Practice Book § 10-50. This argument is without merit. Although the defendant did not specially plead the defense of accord and satisfaction, "the failure to file a special defense may be treated as waived when no objection has been raised to the offer of evidence on the issue." *Pepe* v. *New Britain*, 203 Conn. 281, 286, 524 A.2d 629 (1987). At trial, extensive evidence was offered by both the plaintiff and the defendant on the issue of whether the defendant had satisfied its obligations under the parties' accord. We therefore conclude that the plaintiff has waived any objection to the defendant's failure to specially plead the defense of accord and satisfaction.