Ryder v. J.P. Morgan Chase Bank

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of April, two thousand nineteen.

PRESENT:
   **BARRINGTON D. PARKER,**
   **PETER W. HALL,**
   **CHRISTOPHER F. DRONEY,**
    *Circuit Judges.*

_____

**Gary Ryder,**

    *Plaintiff-Counter-Defendant-*
    *Counter-Claimant-Appellant,*

  **v.**

**J.P. Morgan Chase Bank, DBA Chase Home Finance, AKA Chase Home Mortgage,**

    *Defendant-Counter-Claimant-*
    *Counter-Defendant-Appellee,*

**Jamie Dimon, Daniel Johnstone, Safeguard Properties Inc.,**

    *Defendants,*

**Tuthill Finance LP, SFK Trust Ltd, Round Hill Realty Trust, LLC, Esq. J. Eric Anderson, Steven Scheno, Comoros Crocodile Farm, A.G., SFSK Dependant Trust,**

    *Counter-Defendants.*

18-786

_____

FOR PLAINTIFF-APPELLANT:          Gary Ryder, pro se, Greenwich, CT.

FOR DEFENDANTS-APPELLEES:          Brian D. Rich, Esq., Daniel J. Krisch, Esq.,
                                  Halloran & Sage, LLP, Hartford, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Covello, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Gary Ryder, counseled in the district court, sued J.P. Morgan Chase Bank for violating the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and its implementing regulations, Regulation Z, 12 C.F.R. § 226.1 et seq. The district court dismissed Ryder's claim alleging that J.P. Morgan was required to provide him with supplemental disclosures under TILA in conjunction with Ryder's 2011 loan modification agreement but ruled that Ryder's claim alleging a right to rescind the loan modification would have to be decided on summary judgment. The district court subsequently granted J.P. Morgan's motion for summary judgment, ruling that Ryder did not have the right to rescind under TILA. Ryder, pro se, appeals from both orders. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review *de novo* the dismissal of a complaint pursuant to Rule 12(b)(6). *Forest Park Pictures v. Universal Television Network*, 683 F.3d 424, 429 (2d Cir. 2012). We review a grant of summary judgment *de novo*, "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 126–27 (2d Cir. 2013) (per curiam). "Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, 'there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.'" *Doninger v. Niehoff*, 642 F.3d 334, 344 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

TILA, which governs the issues in this lawsuit, was enacted to "protect consumers against inaccurate and unfair credit billing and credit card practices and promote the informed use of credit by assuring a meaningful disclosure of credit terms." *Strubel v. Comenity Bank*, 842 F.3d 181, 186 (2d Cir. 2016) (internal quotation marks omitted). Lenders must "provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). The "regulatory interpretations of and addenda to the TILA are collectively known as Regulation Z." *Strubel*, 842 F.3d at 187.

Only a new credit transaction "trigger[s] TILA's disclosure requirements[.]" *Begala v. PNC Bank*, 163 F.3d 948, 951 (6th Cir. 1998). Events occurring subsequent to such a transaction do not usually trigger disclosure obligations, *see id*., except in narrow circumstances such as a refinancing in which the new amount financed exceeds the prior debt. *See* 12 C.F.R. § 226.20(a) ("A refinancing is a new transaction requiring new disclosures to the consumer.").

TILA also gives consumers who are borrowing money for their "principal dwelling" the right to rescind the loan within three days of the transaction or within three days of delivery of the "information and rescission forms required under this section." 15 U.S.C. § 1635(a). If the forms are never provided, the borrower's right to rescission survives until three years after the consummation date of the transaction or sale of the property, whichever occurs first. 15 U.S.C. § 1635(f). In a transaction "subject to rescission," a lender must "deliver two copies of the notice of the right to rescind to each consumer entitled to rescind[.]" 12 C.F.R. § 226.23(b)(1). The relevant regulation covering rescission provides an exemption for certain transactions. 12 C.F.R. § 226.23(f)(2). Under that regulation, [t]he right to rescind does not apply to . . . [a] refinancing or

3

consolidation by the same creditor of an extension of credit already secured by the consumer's principal dwelling." *Id.* The regulation also creates an exception to that exemption, stating that "[t]he right of rescission shall apply . . . to the extent the new amount financed exceeds the unpaid principal balance, any earned unpaid finance charge on the existing debt, and amounts attributed solely to the costs of the refinancing or consolidation." *Id.*

The district court did not err in dismissing Ryder's TILA claim despite his argument that the Loan Modification Agreement was a refinancing and therefore J.P. Morgan was required to provide supplemental disclosures following execution of the 2011 loan modification agreement. The court reviewed the plain meaning of the language used in the contract and found that it was, unambiguously, a loan modification. The document, entitled "Loan Modification Agreement," retained the original mortgage loan number and reaffirmed the validity of the existing mortgage. It stated that "all terms and provisions of the [original] Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of all the obligations contained in the Loan Documents[.]" A "refinancing occurs when an existing obligation . . . is satisfied and replaced by a new obligation undertaken by the same consumer." 12 C.F.R. § 226.20(a). Ryder, who was in default at that time, had not satisfied his existing obligation under the original loan documents, and because the Loan Modification Agreement did not replace that obligation with a new obligation, but only modified some of its terms, it was not a refinancing. As a result, TILA and Regulation Z did not require J.P. Morgan to provide Ryder with supplemental disclosures following execution of the Loan Modification Agreement.

Although Ryder argues on appeal that the district court "cherry-picked" language from the Loan Modification Agreement to support its conclusion that the agreement was a loan modification, he does not describe what language was "cherry picked" or how other language in the agreement

4

might have undercut the district court's conclusion. In a similar vein, Ryder's argument that the agreement was an accord and satisfaction, and therefore a refinancing, is meritless. "An accord is a contract under which an obligee [J.P. Morgan] promises to accept a stated performance in satisfaction of the obligor's [Ryder's] existing duty. . . . Upon acceptance of the offer of accord, the creditor's receipt of the promised payment discharges the underlying debt and bars any further claim relating thereto, if the contract is supported by consideration." *Ass'n Res., Inc. v. Wall*, 2 A.3d 873, 900 (Conn. 2010); *see also Tolland Enters. v. Scan-Code*, *Inc*., 239 Conn. 326, 333 n.9 (1996) ("the obligor's original duty is not satisfied until the accord is performed." (emphasis omitted)). The Loan Modification expressly provided that it was not to be considered as a satisfaction or release of the obligations contained in the loan documents. Moreover, any accord—such as Ryder's modified payment schedule set forth in the Loan Modification Agreement—would not have been satisfied because Ryder did not pay the underlying debt.

The district court also did not err in holding that Ryder did not raise a genuine question of material fact relating to the right to rescind. Pursuant to 12 C.F.R. § 226.23(f)(2), this right applies where a new amount financed exceeds the unpaid principal balance, unpaid finance charge, and amounts attributed to the cost of the refinancing. *See* 12 C.F.R. § 226.23(f)(2). J.P. Morgan provided evidence that the amount Ryder owed on his mortgage at the time of the loan modification was $3,479,928.43 (the $2,378,314.96 balance of the original loan plus $819,767.48 in delinquent interest, and $281,845.99 in escrow advances). The new amount financed by the modification *reduced* the amount to $2.9 million, $579,928.43 less than Ryder's pre-modification debt. As a result, the exception allowing rescission in § 226.23(f)(2) does not apply here, and Ryder had no right to rescind under TILA.

Ryder argues on appeal, as he did before the district court, that genuine issues of material fact concerning J.P. Morgan's escrow advance figure and the proper interest rate should have

5

precluded summary judgment with respect to his rescission claim. He asserts that the escrow figure cited by J.P. Morgan differed by about $100,000 from the amount shown on his December 2011 "Annual Escrow Account Statement." The district court properly rejected this argument, holding that even if it were to accept Ryder's lower escrow figure, the difference would not increase the new amount financed by the modification to a sum larger than his pre-modification unpaid balance of $3.47 million, thereby fitting within the § 226.23(f)(2) exception. As to the interest rate, Ryder cites a document provided by J.P. Morgan in September 2011 which, among other things, showed the current rate of interest on his adjustable rate note at 4.177%, which was being modified to 1%. He argues that that rate could not have been correct because the index used to calculate the adjustable rate was so low that the interest rate could not have reached 4.177%. However, this is speculation and argument; as the district court found, Ryder never provided evidence that the interest calculation at the time of the loan modification was in error. And, in the final analysis, the district court properly relied on Ryder's admission that, at the time the Loan Modification Agreement was executed, the amount he owed pursuant to that agreement was less than what he owed on his original mortgage and therefore TILA and Regulation Z did not apply.

We have considered Ryder's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

6